OPINION
Defendant-appellant/cross-appellee, city of Springboro, appeals a decision of the Warren County Court of Common Pleas, upholding a jury verdict for plaintiff-appellee/cross-appellant, Two Victor Company, Ltd. ("Two Victor"), on both breach of contract and promissory estoppel claims. We affirm the decision of the trial court.
Appellant built and operated a golf course at Heatherwoode. Appellant leased the restaurant located there to a private operator. On December 31, 1994 the former restaurant operator opted to terminate his lease and cease operations. Appellant began planning the selection of a new restaurant operator and the construction of a new banquet facility and a pub. Three applicants were recommended to the Springboro City Council by the "Restaurant Selection Committee" appointed by City Council. Among the three applicants was Victor Michael Shampton ("Shampton").
Shampton was operating the Savory restaurant in the Dayton area at the time. Based on Shampton's claims of personal expertise and sustained success with the Savory, he was selected by City Council to be the next food service operator at Heatherwoode.
Shampton and Springboro's city manager, Ed Doczy ("Doczy"), began negotiating a long-term lease agreement. Shampton and others competing to operate the food services were informed by Doczy that the city anticipated entering into a long-term lease, possibly a fifteen-year period, consisting of five successive three-year terms. Shampton's and Doczy's discussions were chronicled in a document referred to as "Heatherwoode Clubhouse Restaurant Negotiation Issues" ("Heatherwoode Negotiation Issues"). When it became apparent that the long-term lease could not be completed before the start of the golf season, appellant authorized Doczy to enter into a short-term "temporary" lease. On May 8, 1995, the lease was signed by Shampton on behalf of his limited liability company, Two Victor and by Doczy on behalf of appellant. Two Victor was formed on April 27, 1995. The interim lease, which was the only signed agreement of the parties, provided in part as follows:
 11. This Lease may be terminated at any time by either party upon thirty (30) days written notice, without showing of cause. This Lease may be terminated upon (7) days written notice by either party upon a material breach of this agreement.
 12. The parties specifically intend that this Lease Agreement shall continue in effect only until a long-term lease containing more detailed terms and conditions can be negotiated and executed. * * *.
Doczy was instructed by appellant to proceed "expeditiously" toward a long-term lease. Despite the "temporary" lease provision indicating that a long-term lease was anticipated, no long-term lease was ever signed.
Shampton closed his Savory restaurant and Two Victor began operations at the Heatherwoode Clubhouse Restaurant. Two Victor invested approximately $131,500 in the Heatherwoode food service operations including buying furniture for the banquet center that was to be built.
In September 1995, appellant issued a request for proposal ("RFP") for golf course professional management services. The RFP stated that "the current food service provider is under a new three-year lease for restaurant, banquet, golfer's grill, and course food service operations." The RFP further provided that "the successful golf course operator will have an opportunity to make a proposal for food service operations after a three-year period."
American Golf Corporation ("AGC") was the successful bidder to manage the golf course. AGC proposed that appellant "have AGC operate [food services] when it becomes available." In February 1996, an AGC representative acknowledged appellant's "concerns with the restaurant" and promised to inform appellant of any observed problems. Thereafter, AGC's course manager, Chuck Shreve ("Shreve"), wrote to appellant to complain of poor food service in the restaurant. On February 16, 1996, appellant wrote to Shampton, stating that as the golf course management issue had been resolved it was time to focus on the restaurant lease. Appellant requested that Shampton provide monthly financial reports and expressed concerns regarding cleanliness of the food service operations and progress on furnishing the banquet center.
The signed short-term agreement between the parties had not required financial reports and Shampton expressed unwillingness to provide them until a long-term lease was signed. The proposed long-term lease agreement did require monthly statements including, gross receipts, sales tax reports, and a monthly sales profile indicating daily revenues by revenue center (e.g., concessions, banquets, etc.). Discussions between appellant and Shampton continued. In October 1996, Shampton began taping his conversations with Doczy and Shreve without the knowledge of appellant, Doczy, or Shreve. Appellant proposed that Shampton enter a management contract situation rather than a lease, and that AGC should manage the contract.
On October 25, 1996, appellant wrote to Shampton noting that there were two alternatives: (1) sever the relationship (appellant acknowledged that Shampton should receive fair value for his investments adjusted for the period of his use) or (2) enter into a management agreement under which AGC would act as Shampton's direct supervisor. With this letter, appellant terminated its short-term lease with Two Victor as of December 31, 1996.
On November 1, 1996, AGC presented a proposal for management of food and beverage services at Heatherwoode. This proposal with some modifications, which included payment of management fees rather than a lease, was later accepted by appellant. On November 4, 1996, Shampton replied that he was not interested in continuing his operation under AGC's supervision.
On January 17, 1997, Shampton and Two Victor filed suit against appellant, Doczy, certain members of the Springboro City Council, AGC, and Shreve. On August 14, 1997, the trial court dismissed all claims against the members of city council. In October 1997, all remaining defendants filed motions for summary judgment. On January 26, 1998, the trial court issued a decision and entry without factual recitations or analysis of the law. The trial court considered the pleadings, the affidavits and depositions filed within the context of the motion, and the written and oral arguments of counsel. All claims for and against Shampton were dismissed by the trial court. The court also dismissed Two Victor's claim against appellant for tortious interference with a business relationship and a breach of contract claim against appellant.
On July 19, 2000, the trial court directed a verdict in favor of Two Victor in the amount of $3,000 for Two Victor's security deposit. The jury returned a verdict in favor of Two Victor on the issue of promissory estoppel and awarded damages in the amount of $120,000. The jury also returned a verdict in favor of Two Victor on the issue of breach of contract and awarded damages in the amount of $85,000. Accordingly, the total jury verdict award in favor of Two Victor amounts to $205,000.
Furthermore, the trial court determined that Two Victor was entitled to interest on the total amount of $208,000. Consequently, the trial court determined the monthly interest amount totals $1,733.33. Given the breach occurred on December 31, 1996 and judgment was rendered on July 19, 2000, Two Victor is entitled to 42.5 months of interest which amounts to $73,666.66. Therefore, the trial court determined the total award to Two Victor as of the date of judgment is $281,666.66. Taking into account all the obligations, offsets and deductions owed to appellant, Two Victor is entitled to a final judgment of $249,600.90 ($281,666.66 — $32,065.76).
Appellant brought this appeal challenging the trial court's ability to uphold a jury verdict for Two Victor on both breach of contract and promissory estoppel claims. Appellant has raised seven assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN AUTHORIZING THE JURY TO RETURN A VERDICT ON TWO CAUSES OF ACTION WHICH ARE FACTUALLY INAPPOSITE. AS A RESULT OF THIS ERROR, THE JURY RETURNED INCONSISTENT VERDICTS, AT LEAST ONE OF WHICH IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant contends the jury instructions were flawed, resulting in the jury returning two verdicts which rely on opposite findings of fact. Appellant maintains the defect resulted specifically from the court's failure in its instructions to specify that an award on one claim bars an award on the other.
In order for a court of appeals to reverse a trial court's judgment on the basis that a jury verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 389. A jury's verdict will only be overturned where it "shocks the senses or makes it appear that a grave error and injustice has been done." Burton Coal Co. v. Gorman Coal Co. (1926), 22 Ohio App. 383, 386. In order to reverse, it must appear that the jury totally misapprehended the facts or were influenced by sympathy, bias, prejudice, willful disregard of duty, perversity, corruption, or other motives. Dean, et al. v. King Co. (1871),22 Ohio St. 118, 134.
In part, the jury was advised in the jury instructions that they could not,
 award damages for the same item twice. Therefore, if you award specific damages for specific losses the plaintiff sustained as a result of his reliance on promises made by the defendant City of Springboro, you cannot award those same damages if you conclude that damages should be awarded for breach of contract.
With these instructions, the jury deliberated and reached a verdict. The bailiff read the interrogatories and the verdict forms to the court. Special interrogatory No. 1 asked, did "Springboro make a promise to establish a long-term lease agreement with plaintiff, which it should have reasonably expected Plaintiff to rely on?" The jury's answer to No. 1 was yes. Special interrogatory No. 2 asked the jury to "state damages to which the plaintiff is entitled as a result of defendant's representation that it intended to establish a long-term lease agreement with plaintiff." The jury stated total damages were $120,000. Special interrogatory No. 3 asked, "did defendant Springboro enter into a fifteen year long-term lease." The answer to No. 3 was yes. Special interrogatory No. 4 asked, "did defendant Springboro breach the fifteen year long-term lease." The answer was yes. Special interrogatory No. 5 asked the jury to "state the total amount of expectancy damages to which the Plaintiff is entitled as a result of defendant's breach of contract." The jury's answer was $85,000.
When a trial judge is faced with a situation where there are inconsistencies in the answers to interrogatories, the trial judge has three options: 1) he may enter judgment consistent with the answers; 2) the jury may be directed to deliberate further; or 3) a new trial may be ordered. Civ.R. 49(B), Wagner v. Rollercade II, Inc. (1983),11 Ohio App.3d 199, 200. It is discretionary with the trial judge as to which course to choose. Id.
However, in this case, all three options were not available because appellant did not raise the issue of inconsistency before the jury was dismissed. See Haehnlein v. Henry (1987), 41 Ohio App.3d 233, 234. Appellant failed to object, move for clarification, or move for resubmission of the verdict and interrogatories to the jury. The record reflects that the trial court read the answers to the interrogatories and then asked counsel if they wished the jury to be polled or had anything further for the record. All parties answered "No."
When a jury returns an inconsistent verdict and no objection is made, the party is unnecessarily limiting the court's options in dealing with the inconsistency by failing to raise an objection. Kenney v. Fealko
(1991), 75 Ohio App.3d 47, 55. An objection to an inconsistent answer by a jury to an interrogatory is waived unless the party raises the objection prior to the jury's discharge. Haehnlein,41 Ohio App.3d at 234. Similarly, a reviewing court will generally not consider a claim of error to which appellant raised no objection below. Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121. Errors that arise during the course of a trial and that are not brought to the attention of the trial court by objection or otherwise at a time when error could have been avoided or corrected are waived, and may not be raised on appeal.
Furthermore, it is always presumed that the jury has followed the instructions given to it by the trial court. Pang v. Minch (1990),53 Ohio St.3d 186, 195. Therefore, we must presume that the jury applied the law as instructed to them on the issue of not awarding damages for the same item twice. Therefore, from a review of the record and as the interrogatory states, $120,000 was awarded for "damages to which Plaintiff is entitled as a result of Defendant's representation that it intended to establish a long-term lease." Since Two Victor invested approximately $131,500 in the restaurant and its fixtures, $120,000 is intended as a return of its investment. As stated in the interrogatory, $85,000 was awarded for the "total amount of expectancy damages." Expectancy damages represent the prospect of gain from the contract. ZBSIndustries, Inc. v. Anthony Cocca Videoland, Inc. (1994),93 Ohio App.3d 101, 107. John Sobecki, regional manager for AGC gave testimony to the yearly profits for the time AGC operated the Heatherwoode food services. The testimony is convoluted, and there appear to be some entries that are identified as "losses" since AGC paid for them, but appellant reimbursed AGC for those expenses. Nevertheless, it seems the yearly profit for 1998 was approximately $63,153. If Two Victor was permitted to remain at Heatherwoode under the three-year renewal provision, Two Victor could have had operated the food services for another sixteen months. If Two Victor operated the food services for that time period, the lease term would have expired in 1998. If the $63,153 profit AGC showed for 1998 is extrapolated to a sixteen-month period, the profit would be $84,204. Ostensibly $85,000 is for lost profits Two Victor would have realized. Consequently, the jury did not award damages for the same item twice.
Appellant also argues that this is plain error contrary to law and should be reversed as such. The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial. Goldfuss, 79 Ohio St.3d at 122. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FAILING TO DISMISS, OR PROVIDE PROPER JURY INSTRUCTIONS FOR, THE CLAIM FOR PROMISSORY ESTOPPEL.
Appellant first argues that promissory estoppel claims are precluded by the Springboro City Charter. Appellant maintains section 6.02 of the Springboro City Charter prohibits promissory estoppel claims against the City and therefore the claims should have been dismissed. In pertinent part, the Springboro City Charter states as follows:
 The manager shall have the following powers and duties: * * * (i) To arrange, prepare and sign contracts, franchises and agreements, in cooperation with the Village Solicitor/City Attorney, but no such contracts, franchises or agreements shall be legal until ratified or authorized by ordinance or resolution of the Council * * *. (Emphasis added.)
The Ohio Supreme Court has adopted the doctrine of promissory estoppel as set forth in the Restatement of the Law 2d, Contracts (1981), Section 90. See McCroskey v. State (1983), 8 Ohio St.3d 29, 30. It is a well-settled general rule that the principals of equitable estoppel apply to municipal corporations as well as to individuals. Kilko v. Cleveland
(1951), 60 Ohio Law Abs. 561, 564. However, promissory estoppel is not applied to municipalities with that rigor with which it is applied to individuals since municipalities have only those powers which are expressly granted them by statute. Columbus v. Federal Gas Fuel, Co. (1903), 14 Ohio Dec. 261, 267. Therefore, people who deal with municipalities must do so at arm's length and are "presumed to know" the powers and limitations of the municipality's agents. Id.
Even though people who deal with municipalities are presumed to know the powers and limitations of the agents to bind the public entity, a municipality may still be estopped. A municipality may be estopped "by the acts of its officers if done within the scope and in the course of their authority or employment, but estoppel does not arise if the act done is in violation of the law." City of Oxford v. Day (Aug. 16, 1998), Butler App. No. CA96-09-183, unreported, quoting Kilko, 60 Ohio Law Abs. at 565. A claim of promissory estoppel involves four elements: (1) there must be a clear and unambiguous promise, (2) the party to whom the promise was made must rely on it, (3) the reliance is reasonable and foreseeable, and (4) the party relying on the promise must have been injured by the reliance. Patrick v. Painesville Commer. Prop. (1997),123 Ohio App.3d 575, 583.
As discussed in the appellant's first assignment of error, there was a clear and unambiguous promise made to Shampton by appellant, through Doczy within the scope and course of his employment. That promise acknowledged that the lease term would be for fifteen years with three-year renegotiation provisions. Shampton, through his company Two Victor, relied upon the promise of a long-term lease by investing in the property and operating the restaurant for twenty months. Because of continued assurances that the long-term lease would be executed promptly, it was reasonable and foreseeable for appellee to rely upon the promise of a long-term lease. Once appellant refused to enter into a long-term lease with Two Victor, Two Victor was injured by the reliance upon that promise. Shampton no longer had the Savory restaurant, which he closed in order to begin operations at Heatherwoode. Two Victor invested approximately $131,500 in Heatherwoode to that point, consisting of investments in the banquet room, bar, and "golfer's grill" equipment. Therefore, a claim for promissory estoppel is not precluded against appellant since the acts of its agent, Doczy, were done within the scope and course of his authority or employment.
Appellant next contends that it was involved in the performance of a government function, i.e., the operation of a golf course, therefore promissory estoppel is not available to Two Victor under Ohio law. Appellant asserts as a general rule, "the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,145-146. R.C. 2744.01(C)(1) states,
 Governmental function means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following: * * * (u) The design, construction, reconstruction, repair, maintenance, and operation of any park, playground, playfield, indoor recreation facility, zoo, zoological park, bath, swimming pool or pond, and the operation and control of any golf course. (Emphasis added.)
There are instances in which the principle of estoppel does apply to a municipality. City of Oxford v. Day (Aug. 16, 1998), Butler App. No. CA96-09-183, unreported, quoting Kilko v. Cleveland (1951), 60 Ohio Law Abs. 561, 565. In this case, a lease for a restaurant facility on a golf course is at issue. While leasing a restaurant facility on a golf course may be a governmental function included in the "maintenance, operation and control of a golf course," in this particular situation it does not. Appellant and Two Victor clearly structured their agreement so the restaurant facility specifically would not operate within the definition of a government function.
Under section 8(a), 8(b) and 9 of the Heatherwoode Negotiation Issues appellant structured the lease agreement wherein Two Victor would contract for and invest in all the items required for the pub, golfer's grill, and banquet center necessary for food services to function. Two Victor was authorized to spend up to $38,250 for the bar, up to a $40,000 expenditure for the golfer's grill, and up to $40,000 for the banquet center. In return, appellant would reimburse Two Victor through a three-year pay-back schedule with lease payment credits. By means of this agreement, appellant would not have to comply with the competitive bidding process required of public entities in the performance of a government function.[1] Therefore, under this lease agreement appellant was not involved in the performance of a government function with regard to the restaurant operations. Accordingly promissory estoppel is available to Two Victor under Ohio law.
Appellant next asserts that Two Victor cannot maintain a claim for promissory estoppel against appellant because Two Victor is a third party to the lease agreement. Further, appellant maintains the doctrine of promissory estoppel has never recognized promises allegedly made to third parties. Appellant argues that Shampton could not act as an agent for a principal that did not exist. Since Two Victor was not formed until April 27, 1995, appellant claims any statements made prior to that date cannot be deemed promises or representations made to Two Victor.
Under Ohio law, a limited liability company ("LLC") is neither a corporation nor a partnership, as those concepts are commonly understood but, instead, is a hybrid. See R.C. 1705.01 et seq. Logically, given that an LLC has some of the attributes of a corporation and some of a partnership, an LLC should be governed by the same rules that apply to those entities. Since a LLC's articles of organization are similar to a corporation's articles of incorporation,[2] and include information similar thereto, the laws regarding corporate organization should apply.[3]
Promoters of a corporation are sometimes referred to as agents. This is a misnomer. Generally speaking, promoters are those persons who have a personal interest in bringing about the incorporation and organization of a corporation. Yeiser v. United States Board and Paper Co. (C.A.6, 1901), 107 F. 340, 348. Their work may commence long before the organization of the corporation and it may continue after the corporation has come into existence. Id.
Shampton's acts were in the capacity of promoter for Two Victor during the negotiations with Doczy. When the May 8, 1995 lease agreement was signed, it was signed by Shampton as manager of Two Victor and Doczy as appellant's city manager. Therefore, appellant and Doczy knew of Two Victor's involvement in the lease. Two Victor is not a third party to the lease agreement since Two Victor appears on the only signed document in the multiple documents comprising this agreement. Promises and representations made to Shampton are imputed to Two Victor because of Shampton's capacity as promoter and manager of Two Victor. Thus, promissory estoppel is available despite the fact that Two Victor did not exist at the time the promises were made.
Appellant next argues that an unpled claim for promissory estoppel cannot lawfully be added to the jury instructions after defendants have presented their case in chief without notice that the claim would be allowed. Shampton and Two Victor's complaint alleges in Count 13 that, "at the time Plaintiffs and the Defendant, City of Springboro, entered into the lease agreement Plaintiffs and Defendant intended to formalize the long-term lease agreement immediately." Count 14 states that, "in reliance of Defendants' promise to formalize the long-term agreement Plaintiffs expended a large sum of money on the leased premises." And Count 15 states, "the mutual intent of Plaintiffs and the Defendant, City of Springboro, to formalize the long-term lease agreement was expressly stated in the May 8, 1995, lease."
A claim for promissory estoppel must include (1) a clear and unambiguous promise, (2) reliance on the promise, (3) the reliance must be reasonable and foreseeable, and (4) there must have been an injury caused by the reliance. Patrick, 123 Ohio App.3d at 583. Counts 13, 14, and 15 of the complaint have language sufficient to consider the cause pled and to put appellant on notice. Accordingly, the second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN LIMITING TESTIMONY AS TO PLAINTIFF-APPELLEE'S UNCLEAN HANDS.
Appellant requested the court to instruct the jury on the "clean hands" doctrine, but the request was refused. Appellant contends that once the court allowed the promissory estoppel claim to go to the jury, appellant should have been allowed to introduce evidence establishing the equitable defense of unclean hands.
The clean hands doctrine states that "equity refuses to lend its aid in any manner to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief." McClanahan v. McClanahan (1946), 79 Ohio App. 231,234. If the alleged wrongful conduct of the complainant "appears not to have injured, damaged, or prejudiced the defendant, the maxim may not be successfully invoked." Id., quoting Equity in 19 American Jurisprudence Section 474.
Appellant claims if Shampton had disclosed the Savory's eviction and debts, he would not have been selected as lessee. Appellant argues if Shampton was not selected, this litigation would not have occurred. Appellant maintains that had evidence and testimony regarding the "clean hands" doctrine been allowed it would have shown that Shampton induced appellant to enter into the lease by materially false representations regarding his success with the Savory restaurant. Therefore, appellant maintains it was damaged by appellee's unlawful or inequitable conduct.
Appellant conducted an extensive search for the new operator of the restaurant. Doczy states in his April 18, 1995 memorandum to the mayor and city council that the proposal to enter into an agreement with Shampton was "part of a long and thorough process." The process involved formation of a "Restaurant Subcommittee" which consisted of "interested citizens from the Citizen Golf Advisory Committee." Furthermore, the memorandum states, "all applicants were impressive and the City Manager was directed to begin negotiations and background checks on the Council's first choice." Doczy went on to recommend Shampton to operate the restaurant.
Appellant had ample opportunity to run checks on Shampton and his Savory restaurant to their satisfaction before entering into a lease agreement with him. Shampton answered all the questions asked of him during the background checks. Doczy stated in his April 18, 1995 memorandum that "all background checks have been completed and the staff is satisfied with the results." Shampton's actions appear not to have injured, damaged, or prejudiced the appellant. It seems that appellant was injured, damaged, or prejudiced by its own omissions in conducting the background check. Consequently, there was no error to refuse to instruct the jury on the "clean hands" doctrine. Therefore, the third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ALLOWING THE JURY TO IMPLY CONTRACT TERMS FROM OTHER STATEMENTS AND WRITINGS AND FROM THE ACTS AND OMISSIONS OF PERSONS ASSOCIATED WITH THE CITY WHICH ARE IN CONFLICT WITH THE CLEAR AND UNAMBIGUOUS TERMS OF THE LEASE.
Appellant first argues the trial court erred in failing to grant summary judgment or a directed verdict as to the claim for breach of contract, because appellant's termination of the lease, which is the only basis for Two Victor's breach of contract claim, was the lawful exercise of a clear, unambiguous and uncontroverted contract right.
It is appropriate for a trial court to grant summary judgment pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. Desher v. Burt (1996), 75 Ohio St.3d 280,293. If the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Id.; Civ.R. 56(E). An appellate court reviews a trial court's decision whether to grant summary judgmentde novo. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440.
In this case there was a genuine issue of material fact. Which contract controlled the agreement was in doubt. Since appellant maintained the short-term lease was controlling and Two Victor maintains the short-term lease was superceded by a long-term lease, there was a genuine issue of material fact. Reasonable minds could not come to only one conclusion in this situation, therefore summary judgment was not appropriate and there was no error to deny the motion.
Pursuant to Civ.R. 50(A)(4), a motion for directed verdict may be granted on a determinative issue if, construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only decide the issue in favor of the moving party. The nonmoving party is entitled to the benefit of all reasonable inferences in the evidence.Broz v. Winland (1994), 68 Ohio St.3d 521, 526. A motion for directed verdict is a question of law and therefore, as an appellate court, we review the trial court's decision de novo. Campbell v. Colley (1996),113 Ohio App.3d 14, 18.
Appellant argues that it cannot be held liable for the exercise of a clear and unambiguous contract right and as a result it deserves a directed verdict. Since there was a dispute as to which contract controlled, the termination of the lease was not a clear and unambiguous contract right. Thus, reasonable minds could differ on the issue. Therefore, there was no error to deny the motion for directed verdict.
Appellant next argues that the trial court erred by failing to render summary judgment or directed verdict for it on the breach of contract claim and by failing to give requested jury instructions that the Springboro Charter is applicable law, and that under it appellant is not legally bound by any purported contract term which has not been authorized by resolution or ordinance of the City Council.
The principles of equitable estoppel apply to municipal corporations as well as to individuals. Kilko v. Cleveland (1951), 60 Ohio Law Abs. 561, 564. A municipality may be estopped "by the acts of its officers if done within the scope and in the course of their authority or employment * * *." City of Oxford v. Day (Aug. 16, 1998), Butler App. No. CA96-09-183, unreported, quoting Kilko, 60 Ohio Law Abs. at 565. Thus, appellant can be legally bound by a contract term not authorized by resolution or ordinance of the city council. Therefore, there was no error in denying the summary judgment because there was a genuine issue of material fact as to which contract was controlling. Appellant was not entitled to judgment as a matter of law and reasonable minds could come to more than one conclusion. There was no error in denying a directed verdict for appellant on the breach of contract claim or by refusing to give the requested jury instructions regarding the Springboro Charter because reasonable minds could reach different conclusions.
Appellant next argues that the trial court erroneously disregarded the plain language of the lease agreement and the council resolution authorizing it when it instructed the jury that it could imply the existence of a fifteen-year lease.
Requested jury instructions should be given if they are correct statements of the law as applicable to the facts of the case. Murphy v.Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585. In reviewing a record to ascertain whether sufficient evidence exists to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,124.
The plain language of the lease agreement and the city council resolution were not disregarded. Those documents were construed with other documents that comprise the agreement and were read as a whole to conclude the intent of the contract. See Legler, Admr., v. Guaranty Co. (1913), 88 Ohio St. 336, 336-337. There was sufficient evidence in the record to conclude that the lease agreement was for a term of fifteen years when the multiple documents are construed together. Therefore, there was no error in the jury instructions.
Appellant next argues that the court "erroneously disregarded the parole evidence rule during summary judgment and directed verdict proceedings and [sic] when it permitted the jury to consider documents and testimony purporting to supplement or contradict the lease, which is a fully integrated contract."
Ordinarily, the parol evidence rule is used to preclude the use of oral testimony to vary the terms of a written agreement that is complete on its face. If a writing is only partially integrated, in that it does not completely set forth the entire agreement of the parties, parol evidence is admissible. Monnett v. Monnett (1888), 46 Ohio St. 30, 35.
The short-term lease was not in lieu of a long-term lease agreement, but in preparation for the long-term lease. Therefore, the short-term lease was not intended to be a fully integrated contract complete on its face. A fully integrated contract is where the parties adopt a writing as "the final and complete expression of the parties' agreement."Fontbank, Inc. v. Compuserve, Inc. (2000), 138 Ohio App.3d 801, 808.
It is apparent the short-term lease was not meant to be the final and complete expression of the agreement when it is compared to the Heatherwoode Negotiation Issues. The short-term lease did not contain a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding regarding the subject matter. Section twelve of the short-term lease states, "the parties specifically intend that this Lease Agreement shall continue in effect only until a long-term lease containing more detailed terms andconditions can be negotiated and executed." (Emphasis added.) Furthermore, it is clear that the short-term lease is not as detailed as the Heatherwoode Negotiation Issues. The short-term lease contains only twelve provisions while the Heatherwoode Negotiation Issues document has thirty provisions.
We find the short-term lease is not a completely integrated document. As a partially integrated document, the short-term lease must be read in light of and integrated with the other selected documents that were presented by the parties. After reviewing all of the briefs, exhibits, agreements, evidence, and oral arguments that were presented by the parties, we conclude that the parol evidence rule was not erroneously disregarded during summary judgment and directed verdict proceedings when the jury was permitted to consider documents and testimony purporting to supplement or contradict the lease, because the short-term lease was not a fully integrated contract.
Additionally, the parol evidence rule only precludes the introduction of evidence of conversations or declarations which occur prior to or contemporaneous with a written contract and which attempt to vary or contradict terms contained in the writing; the rule does not bar evidence of a subsequent oral agreement which modifies the prior written agreement. Gerwin v. Clark (1977), 50 Ohio App.2d 331, 332-333. Since the rule does not bar evidence of a subsequent oral agreement which modifies the prior written agreement, the oral agreements between Doczy and Shampton that the long-term lease was forthcoming would not be barred by the parol evidence rule. Therefore, there was no error permitting the jury to consider documents and testimony purporting to supplement or contradict the lease.
Appellant next argues the Court erroneously disregarded the statute of frauds in permitting the jury to consider allegations that a long-term lease of real property was created by verbal statements of persons associated with appellant or by inferences drawn from their acts or omissions.
Ohio's statute of frauds is found in R.C. 1335.05. That statute provides, in pertinent part:
 No action shall be brought whereby to charge the defendant, upon a special promise, to answer for * * * a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * *; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *.
The long-term lease agreement in this case is a conglomeration of acts and documents which supplants the short-term lease. Based upon equity principles, a parol lease is "taken out of the statute [of frauds] by virtue of partial performance." Weishaar v. Strimbu (1991),76 Ohio App.3d 276, 283. An agreement is only removed from the operation of the statute where the party relying on the agreement changes his position to his detriment and makes it impractical or impossible to return the parties to their original status. Delfino v. Paul Davies Chevrolet,Inc. (1965), 2 Ohio St.2d 282, 287-288.
In this case, Shampton, through Two Victor, detrimentally changed his position in reliance upon appellant's promise of a long-term lease by taking possession of the restaurant, investing cash into the venture, and operating it for twenty months. As such, the agreement is removed from the statue of frauds and there was no error in permitting the jury to consider allegations that a long-term lease of real property was created by verbal statements of persons associated with appellant. Therefore, the fourth assignment of error is overruled.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ADMITTING INTO EVIDENCE INADMISSIBLE AND UNAUTHENTICATED TRANSCRIPTS OF ILLEGALLY OBTAINED AUDIO TAPES, AND FURTHER BY ALLOWING PORTIONS OF THE TRANSCRIPTS WHICH WERE MORE PREJUDICIAL THAN PROBATIVE TO BE PRESENTED TO THE JURY WITHOUT GIVING THE JURY ACCESS TO THEIR CONTEXT.
Appellant argues that the trial court erred in permitting Two Victor to exhibit to the jury transcripts of tape recordings, thereby violating the best evidence rule and by treating the transcripts like depositions. Appellant also argues the trial court erred by failing to hold an evidentiary suppression hearing and by failing to suppress pursuant to R.C. 2933.62 and 2933.63 for illegally intercepted oral communications.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, syllabus. The judgment of the trial court will not be reversed on appeal absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Evid.R. 1002 applies where the content of a writing or recording is to be proved. Evid.R. 1002 states:
 To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio.
This rule does not require that a recording be produced anytime one seeks to prove an event or fact which can be proven by a recording, but which exists independently of a recording. See Fairfield CommonsCondominium Assn. v. Stasa (1985), 30 Ohio App.3d 11, 15-16.
In this case, the content of the tape was not the object of proof. The testimony of the witnesses was the object of its proof. Because Shampton, Doczy, and Shreve could have testified to Doczy's statements during the conversation without the tape recording, the event exists independently of the recording. The recording was used for cross-examination of the witnesses. Since neither the tapes nor transcripts were entered into evidence, the best evidence rule does not apply. Consequently, the trial court did not abuse its discretion, act unreasonably, arbitrarily, or unconscionably, in permitting plaintiff to exhibit to the jury transcripts of the intercepted communications.
Furthermore, R.C. 2933.52(A)(1) provides that "[n]o person purposefully shall * * * [i]ntercept * * * a wire, oral, or electronic communication." However, an intercepted communication is not illegal if it is obtained by a "person who is not a law enforcement officer and who intercepts a wire, oral, or electronic communication, if the person is a party to thecommunication * * *, and if the communication is not intercepted for the purpose of committing a criminal offense or tortious act * * *." (Emphasis added.) R.C. 2933.52(B)(4).
In this case, Shampton taped conversations that took place between himself, Doczy and Shreve on October 25, 1996. Shampton was meeting with Doczy and Shreve because Doczy was attempting to change the long-term lease of the restaurant with Two Victor into a management agreement. In the management agreement AGC would supervise Two Victor's operation of the food services.
R.C. 2933.63 sets forth the law of Ohio regarding illegally intercepted, privileged communications and interceptions pursuant to an interception warrant. Since Shampton was a party to the conversation, his interception of the conversation was legal. The conversation was not privileged and it was not pursuant to an interception warrant, therefore R.C. 2933.63 does not apply to this situation. R.C. 2933.62 sets forth the conditions for receiving the recorded interception into evidence. Since neither the tapes nor the transcript of the tapes were entered into evidence, R.C. 2933.62 does not apply to this situation. Consequently, no hearing or suppression was required. Therefore, the fifth assignment of error is overruled.
Assignment of Error No. 6:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY NOT EXCLUDING ALL EVIDENCE OF FUTURE PROFITS AFTER THE DATE OF THE LAWFUL TERMINATION OF THE CONTRACT AND BY NOT GRANTING A DIRECTED VERDICT IN FAVOR OF DEFENDANT-APPELLANT ON THE ISSUE OF FUTURE PROFITS.
Appellant contends the termination of the lease with Two Victor was in accord with a clear and unambiguous termination provision. Appellant argues that since the termination was lawful, it can have no liability for any acts or omissions occurring after that date. Therefore, appellant contends future profits are not available to Two Victor.
Lost profits can be recovered in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty. Charles R. Combs TruckingInc. v. International Harvester Co. (1984), 12 Ohio St.3d 241, syllabus.
Profits were within the contemplation of the parties at the time the contract was made. The proposed long-term lease agreement required monthly statements including gross receipts, sales tax reports, and a monthly sales profile indicating daily revenues by revenue center (e.g., concessions, banquets, etc.) as the lease payments were variable depending on profits. It is apparent that the loss of profits is the probable result of the breach of the long-term lease since Shampton would no longer have the facility in order to run a restaurant. And the profits were not remote and speculative and were shown with reasonable certainty at trial. The trial court heard evidence regarding actual profits of the Heatherwoode food services during that time period. Evidence was offered demonstrating the total income and gross profit of the new operator of the food and beverage services at Heatherwoode for the three-year period after appellee's lease was breached.
All the elements for the recovery of lost profits in a breach of contract action have been met. Since the termination of the contract was not lawful, there was no error in admitting evidence of future profits after the date of the contract termination. Therefore, the sixth assignment of error is overruled.
Assignment of Error No. 7:
 THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF DEFENDANT-APPELLANT BY ASSESSING PREJUDGMENT INTEREST AND COSTS FOR PROMISSORY ESTOPPEL AND FOR BREACH OF CONTRACT.
Appellant argues that the trial court erred by awarding prejudgment interest when it was not prayed for, when Two Victor never filed a motion for prejudgment interest, and when the trial court failed to hold a hearing on the issue and make factual findings which are mandatory prerequisites for an award of prejudgment interest.
Prejudgment interest is controlled by R.C. 1343.03(A) and does not require a motion or hearing prior to an award of prejudgment interest. The plain language of R.C. 1343.03(A) states,
 * * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or contract * * * the creditor is entitled to interest at the rate of ten percent per annum. (Emphasis added.)
The statute references no predicate determinations which need to be made before a creditor will be entitled to interest. Prejudgment interest does not punish the party responsible for the underlying damages but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. Westbrock v. Western Ohio Health Care (2000),137 Ohio App.3d 304, 324. Furthermore, a trial court's grant of prejudgment interest will be upheld absent an abuse of discretion. Wagnerv. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 292. An abuse of discretion requires more than an error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Clark (1994), 71 Ohio St.3d 466, 470. Additionally, the trial court provided both parties a proposed judgment entry and neither requested a hearing.
Since the trial court did not act unreasonably, arbitrarily or unconscionably, there was no abuse of discretion to award prejudgment interest. Therefore, the seventh assignment of error is overruled.
Cross-Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLEE/CROSS-APPELLANT IN DIRECTING A VERDICT IN FAVOR OF DOCZY ON THE CLAIM OF TORTIOUS INTERFERENCE.
The decision to grant or deny a motion for directed verdict presents a question of law, and consequently, the trial court's decision is reviewedde novo. Campbell v. Colley (1996), 113 Ohio App.3d 14, 18.
In the cross-assignment of error, Shampton maintains Doczy prevented Two Victor from performing its own contract or prevented Two Victor from entering into a prospective contract.
Under Ohio law, a claim for tortious interference with a business relationship may be maintained against "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another * * *." Juhasz v. Quick Shops, Inc. (1977),55 Ohio App.2d 51, 55. However, "tortious interference does not lie when the defendant is an agent of the principal and he or she acts within the scope of his or her duties." Russell v. City of Norwood (Feb. 27, 1998), Wood App. No 97-050, unreported at 3.
Doczy was acting within the scope of his duties the entire time he was negotiating with Shampton. Hence, Doczy did not tortiously interfere with Two Victor's entering into a prospective contract or from performing its own contract. Consequently, the trial court did not err in directing a verdict in favor of Doczy. Therefore, plaintiff-appellee/cross-appellant's cross-assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and WALSH, J., concur.
[1] R.C. 735.05 states in pertinent part, "When an expenditure, * * * exceeds fifteen thousand dollars, such expenditure shall be first authorized and directed by ordinance of the city legislative authority. When so authorized and directed, * * * the director shall make a written contract with the lowest and best bidder after advertisement for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city."
[2] See Steven A. Martin, "Senate Bill 74: Expanded Flexibility for Ohio Businesses and Professionals." Ohio CLE Institute Reference Manual, Volume 94-65.
[3] Bosko, The Best of Both Worlds: The Limited Liability Company (1993), 54 Ohio St. L.J. 175.